IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEWART TITLE GUARANTY COMPANY
   *Plaintiff,*

v.

SANFORD TITLE SERVICES, LLC, ET AL.
   *Defendants.*

Civil Action No.: ELH-11-620

**MEMORANDUM OPINION**

Stewart Title Guaranty Company ("Stewart Title"), "an insurance company that underwrites title insurance," Complaint ("Compl.," ECF 1) ¶ 3, has filed suit against Sanford Title Services, LLC (Sanford Title") and sixteen other defendants for alleged misappropriation and misuse of settlement escrow funds in connection with various real estate transactions.[1] According to plaintiff, the escrow funds were used "as personal slush funds." *Id.* ¶ 30.

Presently before the Court are two motions for more definite statement, one filed by defendant Senyo Bulla (ECF 16) and the other by defendant George Akinola (ECF 48). Plaintiff, which insured some of Sanford Title's customers,[2] Compl. ¶ 41, opposes both motions (ECF 19 & 56). The issues have been fully briefed and the Court now rules pursuant to Local Rule 105.6, no hearing being necessary.

---

[1] Jurisdiction is proper pursuant to 28 U.S.C. § 1332.

[2] "Stewart Title asserts claims . . . that it possesses in its own right." Compl. ¶ 41. But, it also "asserts claims as subrogee of the claims possessed by the customers of Sanford Title," for whom Stewart Title "paid, resolved, corrected or is otherwise liable to." *Id.*

**Factual and Procedural Background**

The facts as alleged in the Complaint are tangled. Sanford Jaffe "owned and controlled" Sanford Title and "was also one of its employees." Compl. ¶ 4. Sanford Title acted as a settlement agent, conducting "several hundred" real estate "closings for people and businesses seeking to purchase and/or finance purchases of real property." *Id.* ¶¶ 22, 25. It was also involved in the refinancing of "loans secured by real property." *Id.* ¶ 22. In addition, Jaffe was employed by and also "owned and controlled" The Sanford Companies, Inc., U.S. Financial Capital, Inc., and TSC/820 Hillside, L.L.C., all of which are named as defendants. *Id.* ¶¶ 5-7. Plaintiff avers that the defendants, identified as "families, friends, cronies, and or related companies," *id.* ¶ 34, "conspired to use Sanford Title for their own improper purposes." *Id.* ¶ 26. According to plaintiff, the defendants were recipients of "improper disbursements" made from settlement funds held in escrow. *Id.* ¶ 34. For example, Akinola, with his "pseudonym or trade name," AIS, allegedly received $601,850.00 in "improper disbursements." *Id.* ¶¶ 16, 34. Sanford Title allegedly commingled operating funds with escrow funds in a manner to "avoid detection of improper disbursement of escrow funds." *Id.* ¶ 37.

In addition to "improper disbursements," Sanford Title allegedly failed to record instruments "for more than 50 transactions." *Id.* ¶ 27. As a result, purchasers did not hold legal title to their properties, loans made by financial institutions and mortgage companies were unsecured, and prior liens and encumbrances continued to cloud properties. *Id.* Additionally, the Complaint alleges an instance in which Sanford Title did not honor a check issued to pay "transfer and recordation taxes" for the transaction's "Deed and Purchase Money Deed of Trust." *Id.* ¶ 29. According to plaintiff, Sanford Title also "received funds from borrowers and or lenders for the express purpose of paying off . . . existing liens" and mortgages, but failed to do

so. *Id.* ¶ 28. These failed payoffs allegedly totaled "more than $1,300,000." *Id.* Further, Sanford Title allegedly received premiums "for transactions that were to be insured by Stewart Title," but "seldom remitted" those funds to Stewart Title. *Id.* ¶ 33.

The Complaint describes two occasions in which property owners, upon settlement, actually received their properties without a mortgage, contrary to the terms of the settlement statements. One such instance involved the refinancing of defendant Bulla's mortgage. Paragraph 32 of the Complaint avers:

> A closing was conducted on or about September 25, 2009 for Mr. Bulla's refinance of his then existing mortgage which was secured by the real property and improvements commonly known as 4313 Quanders Promise Drive, Bowie, Maryland 20720 ("Quanders Property"). The settlement statement for this transaction states that $497,026.38 was paid to satisfy Mr. Bulla's then existing mortgage. Funds for that payment were to come from a new loan Mr. Bulla was to obtain in the amount of $508,519.00. However, Mr. Bulla never received the new loan. Despite not receiving proceeds from the new loan, the closing was conducted and funds were disbursed from escrow which paid off Mr. Bulla's then existing mortgage. As it stands, Mr. Bulla is living in the Quanders Property mortgage free.

In addition, plaintiff complains about an incident concerning the purchase and finance of a home by the boyfriend of defendant Bonnie Meehan. *Id.* ¶ 31. The Complaint avers that Meehan, "an employee of Sanford Title," *id.* ¶ 10, was also employed by and "owned and controlled" defendant BKM Processing & Consulting, L.L.C. *Id.* ¶ 9.

According to the Complaint, "[a]s of January 2010, Stanford Title had virtually no money in any of its accounts and it stopped conducting closings." *Id.* ¶ 38. It ceased operations at that time. *Id.* By then, "Sanford Title's escrow account was estimated to be missing and or have lost between $2 million and $4 million." *Id.* ¶ 39. Plaintiff claims that it "has resolved and or corrected many of the acts or omissions arising out of closings conducted by [defendants] Sanford Title, Jaffe and or Ms. Meehan." *Id.* ¶ 40.

Of relevance here, Stewart Title alleges the following claims against both Bulla and Akinola: fraudulent conveyance (Count VI); conspiracy (Count VII); constructive trust (Count VIII); and unjust enrichment (Count XII). In addition, as to Bulla, plaintiff has asserted an equitable lien (Count IX) with respect to the Quanders Property in Bowie, Maryland.[3]

## Discussion

### I.

Rule 12(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

The Fourth Circuit has stated that FED. R. CIV. P. 12(e), which governs motions for more definite statement, "must be read in conjunction with Rule 8." *Hodgson v. Va. Baptist Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973). Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must contain three elements:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
(2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Unlike a Rule 12(b)(6) motion, which tests the legal sufficiency of a complaint, a Rule 12(e) motion for more definite statement focuses on whether "'a party has enough information to frame an adequate answer.'" *Streeter v. SSOE Sys.*, No. WMN-09-CV-01022, 2009 WL 3211019, at *10 (D. Md. Sept. 29, 2009) (quoting *Doe v. Bayer Corp.*, 367 F. Supp. 2d 904, 917

---

[3] A lien is also sought as to another property, as well as a car, but it does not appear that those pertain directly to Bulla.

(M.D.N.C. 2005)).  Such motions are "'designed to strike at unintelligibility rather than simple want of detail.'"  *Seneca One Fin., Inc. v. Structured Asset Funding, LLC*, No. DKC 10-1704, 2010 U.S. Dist. LEXIS 117572, at *6 (D. Md. Nov. 4, 2010) (quoting *Frederick v. Koziol*, 727 F. Supp. 1019, 1021 (E.D. Va. 1990) (internal quotation marks omitted)).  But, they "are viewed with disfavor, and are rarely granted."  *Cellars v. Pac. Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Ca. 1999).

When the information sought in connection with a Rule 12(e) motion "'is available or properly sought through discovery, the motion should be denied.'"  *Seneca One Fin.*, 2010 U.S. LEXIS 117572, at *6 (quoting *Frederick*, 727 F. Supp. At 1020-21).  In addition, if the court is satisfied that the complaint provides enough information to frame a responsive pleading, "a court should deny the Rule 12(e) motion and avoid delay in maturing the case."  *Doe*, 367 F. Supp. 2d at 917 (citing *Hodgson*, 482 F.2d at 824).

## II.

Defendant Bulla suggests that all the counts of the Complaint apply equally to *all* the defendants.  *See* Defendant Senyo Bulla's Memorandum of Points and Authorities in Support of his Motion for a More Definite Statement ("Bulla Memo.," ECF 16-1) 2.  He complains that the Complaint does not identify any specific wrongdoing that shows how he personally was involved in the alleged wrongful acts.  *Id.* at 4.

In response, plaintiff contends that the "WHEREFORE" clauses of the counts identify the particular defendants against whom those counts are lodged.  *See* Plaintiff's Memorandum in Response to Defendant Bulla's Motion for More Definite Statement ("Bulla Resp.," ECF 19) 3.  Plaintiff also maintains that "[t]he proper remedy for Mr. Bulla is to conduct discovery . . . not to require Stewart Title to plead every minute detail."  *Id.*

I agree with plaintiff that the "WHEREFORE" clauses of the Complaint make clear which counts apply to which defendants. Moreover, the Complaint is not so "vague or ambiguous" that defendant Bulla "cannot reasonably prepare a response." FED. R. CIV. P. 12(e).

Therefore, I will deny Bulla's motion for more definite statement.

### III.

Defendant Akinola takes issue with plaintiff's allegation of subject matter jurisdiction, as well as each of the individual counts asserted against him. *See* Memorandum of Points and Authorities in Support of Motion for a More Definite Statement ("Akinola Memo.," ECF 48). Regarding subject matter jurisdiction, he states: "For the Court to have subject matter jurisdiction, the Plaintiff would have to allege sufficient facts for the Defendant to determine that the alleged actions occurred in the State of Maryland." *Id.* at 6. Regarding the other counts pertinent to him, Akinola essentially challenges the lack of detail regarding the $601,850 he purportedly received and the alleged conspiracy. He seeks information connecting the $601,850 to real estate transactions, including the dates on which the alleged payments were made. *Id.* at 8-9. And, with specific regard to the claim for unjust enrichment, he notes that "there is an express contract between Plaintiff and Sanford Title Services," and complains that plaintiff has failed to allege that any benefit was conferred on him. *Id.* at 11.

In response, plaintiff contends that it has adequately set forth the elements of the causes of action asserted against Akinola. *See* Plaintiff's Memorandum in Response to Defendant Akinola's Motion for More Definite Statement ("Akinola Resp.," ECF 56). With regard to Akinola's suggestion that a contract between plaintiff and Sanford Title precludes a claim for unjust enrichment against Akinola, plaintiff asserts: "Akinola's argument would only be relevant if there were a contract between Akinola and *Stewart Title*. There is no averment of

such a contract . . . ." *Id.* at 6 n.3 (emphasis added). Stewart Title also argues that defendant's challenge to subject matter jurisdiction is without merit, because Akinola does not contend that plaintiff failed to plead the requirements of 28 U.S.C. § 1332(a), and the transactions at issue occurred in Maryland. *Id.* at 6-7 & n.3. Plaintiff characterizes Akinola's arguments as "contest[ing] the truth of the facts of the Complaint" and, as such, suggests that Akinola's concerns are more appropriate for the discovery process, not a motion for more definite statement. *Id.* at 7.

The Court again agrees with plaintiff. First, plaintiff correctly notes that Akinola's subject matter jurisdiction argument is wrong, as a matter of law. The case was initiated pursuant to 28 U.S.C. § 1332(a), which provides a forum for cases in which citizens are diverse and the matter in controversy exceeds $75,000. Diversity must be "complete," which means that "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Here, plaintiff is a Texas corporation, with its principal place of business located there. Most of the defendants are citizens of Maryland, and none are citizens of Texas. Therefore, the complete diversity requirement of 28 U.S.C. § 1332(a) is satisfied. Even were the Court to construe Akinola's argument as pertaining to venue, the facts show that relevant events occurred in Maryland.

Second, the Court cannot characterize the various counts of the Complaint as "unintelligible." To the contrary, the Complaint is not so "vague or ambiguous" that Akinola "cannot reasonably prepare a response." FED. R. CIV. P. 12(e).

Therefore, I will deny Akinola's motion for more definite statement.

Date: May 4, 2011 /s/
Ellen Lipton Hollander
United States District Judge