IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEWART TITLE GUARANTY
COMPANY,
    *Plaintiff*,

v.

SANFORD TITLE SERVICES, LLC,
*et al.*,
    *Defendants*.

Civil Action No. ELH-11-620

**MEMORANDUM OPINION**

Plaintiff, Stewart Title Guaranty Company ("Stewart Title"), is a title insurance company that insured many of the customers of Sanford Title Services, LLC ("Sanford Title"). Complaint ¶ 41 (ECF 1). Stewart Title has sued Sanford Title and sixteen other defendants, alleging that they misappropriated settlement funds held in escrow by Sanford Title in connection with various real estate transactions, using the escrow accounts "as personal slush funds." *Id.* ¶ 30.[1]

Of import here, Stewart Title contends that this lawsuit constitutes a *lis pendens* upon two parcels of real property in Maryland: 820 Hillside Avenue, in Edgewater, Anne Arundel County (the "Hillside Property"); and 4313 Quanders Promise Drive, in Bowie, Prince George's County (the "Quanders Property"). Accordingly, Stewart Title has filed a Notice of *Lis Pendens* on each of the two properties with the clerk of the circuit court in the county where each property is located.

---

[1] The allegations of Stewart Title's Complaint are summarized in the Court's earlier Memorandum Opinion dated May 4, 2011 (ECF 59). In this opinion, I will assume the parties' familiarity with many of the underlying factual allegations.

Now pending for decision is a "Motion to Terminate Lis Pendens" (ECF 65) filed by defendants Sanford Bruce Jaffe ("Mr. Jaffe"); Sanford Title; The Sanford Companies, Inc.; U.S. Financial Capital, Inc.; and TSC/820 Hillside, LLC ("TSC") (collectively, "Jaffe Defendants"). For the reasons that follow, the Jaffe Defendants' motion will be denied.

**Background**

Stewart Title's claim of *lis pendens* derives from Counts VIII and IX of its Complaint. These counts assert, respectively, claims of constructive trust and equitable lien upon the two properties.[2] Specifically, the Complaint alleges that two defendants, Daniel and Siegrid Barnett, purchased the Hillside Property for $413,000. Complaint ¶ 31. The Barnetts were supposed to obtain a mortgage loan of $405,519.00 to finance the purchase, but never received the loan. *Id.* However, the purchase money was disbursed from Sanford Title's account, from "funds that Sanford Title had received for other transactions," and thus the Barnetts "received a house without a mortgage." *Id.* At the time, Mr. Barnett was the boyfriend of another defendant who was employed by Sanford Title. *Id.* Subsequently, Mr. Jaffe, who is the owner of Sanford Title, "caused" the Barnetts to convey the Hillside Property to TSC, which is "a separate entity owned by Mr. Jaffe." *Id.* ¶ 87.

The Quanders Property is owned by defendant Senyo Bulla. Complaint ¶ 32. Mr. Bulla refinanced an existing mortgage on the Quanders Property. *Id.* According to the Complaint, Sanford Title disbursed escrow funds to pay Bulla's mortgage, in the amount of $497,026.38, at the settlement for the refinancing. Funds for that payment were supposed to come from a new loan that Mr. Bulla was to obtain, in the amount of $508,519. *Id.* However, like the Barnetts, he

---

[2] Counts VIII and IX also assert a constructive trust and an equitable lien upon a 2010 Chevrolet Camaro owned by one of the defendants, but those claims are not at issue here.

did not actually obtain the loan. *Id.* "As it stands, Mr. Bulla is living in the Quanders Property mortgage free." *Id.*

Plaintiff claims that, due to the shortfalls in Sanford Title's escrow account resulting from the transactions concerning the Quanders Property and the Hillside Property, as well as other derelictions, Stewart Title has "been caused to pay numerous items that should have been paid from Sanford Title's escrow funds but were not." *Id.* ¶ 85. Accordingly, Stewart Title asserts that it is entitled to the imposition of a constructive trust and/or an equitable lien on both the Hillside Property and the Quanders Property. In its view, the claim of entitlement constitutes a *lis pendens*.

In their motion, the Jaffe Defendants argue that Stewart Title's notices of *lis pendens* were wrongfully filed. Thus, they ask the Court to terminate the *lis pendens*.

## Discussion

Subject matter jurisdiction is founded on diversity of citizenship.[3] In a diversity action, "on questions of substantive law, this court must apply the law that the forum state . . . would apply if it heard the case." *Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.*, 594 F.3d 285, 290 (4th Cir. 2010). Here, the forum state is Maryland.

In Maryland, *lis pendens* is a common law doctrine. *See Greenpoint Mortg. Funding, Inc. v. Schlossberg*, 390 Md. 211, 223 (2005). It concerns "the jurisdiction, power, or control which a court acquires over property involved in a lawsuit pending its continuance and final judgment." *DeShields v. Broadwater*, 338 Md. 422, 433 (1995). *Lis pendens* "generally arises

---

[3] Stewart Title is a Texas corporation with its principal place of business in Houston, Texas. None of the defendants are citizens of Texas, and more than $75,000 is in controversy. *See* 28 U.S.C. § 1332(a) (diversity jurisdiction).

in the context of disputes in which one or more parties have possession of real property and the potential of premature, precipitous, undue or untoward alienation of that property needs to be avoided." *Greenpoint*, 390 Md. at 222-23. "Under the doctrine, an interest in property acquired while litigation affecting title to that property is pending is taken subject to the results of that pending litigation." *DeShields*, 338 Md. at 433.

A *lis pendens* does not enjoin the sale of property pending litigation. Rather, its "basic function" is simply "to advise a person who seeks to acquire an interest in property subject to a *lis pendens* that he will be bound by the outcome of the noticed litigation." *Greenpoint*, 390 Md. at 222. The *DeShields* Court explained, 338 Md. at 435-36 (internal citations omitted; some alterations in *DeShields*):

> A "*lis pendens* is a general notice of an equity to all the world," not notice of an actual lien. Consequently *lis pendens* proceedings do not technically prevent alienation; they place a cloud on title to the property and "[create] a priority in favor of the plaintiff, which, if the plaintiff succeeds on the merits of the claim, relates back to the date of the filing of the complaint . . . [and, thus, preserve] for a successful plaintiff the opportunity to have a lien relating back to the date of the filing of the complaint."
>
> \* \* \*
>
> [W]hen, after the complaint has been filed, the defendant transfers his or her interest in the property which is the subject of the lawsuit, *lis pendens* applies to subject that property to the result of the pending litigation . . . . Because *lis pendens* provides constructive notice of the equity claimed by the plaintiff, the transferee's actual notice of that equitable claim prevents that transferee from being a purchaser in good faith.

Notably, *lis pendens* applies only in "proceedings directly relating to the title to the property transferred or in which the ultimate interest and object is to subject the property in question to the disposal of a decree of the court." *DeShields*, 338 Md. at 435. In *Greenpoint*, 390 Md. at 223, the Maryland Court of Appeals said: "[I]t is clear in Maryland that generally,

prior to judgment, the nature of the action must be such that it directly involves the property, if the property is to be subject to a *lis pendens*."

Maryland Rule 12-102 is Maryland's primary provision regulating the doctrine of *lis pendens*. It states, in part: "This Rule applies to an action filed in a circuit court or in the United States District Court for the District of Maryland that affects title to or a leasehold interest in real property located in this State." Md. Rule 12-102(a). The remaining provisions of the rule provide that the filing of a complaint or notice of *lis pendens* is constructive notice of the *lis pendens* to any purchaser when filed in the county where the property is located, Md. Rule 12-102(b), and establish that termination of a *lis pendens* may be ordered "[o]n motion of a person in interest and for good cause" while the action is pending, and is mandatory upon conclusion of the action. Md. Rule 12-102(c). According to the Court of Appeals, the rule "contains no substantive modification of the common law." *Greenpoint*, 390 Md. at 223.[4]

The question raised by the Jaffe Defendants' motion is whether Stewart Title's claims for imposition of a constructive trust and/or an equitable lien are sufficient to support a *lis pendens*. The Jaffe Defendants insist that Stewart Title's claims are not sufficient because Stewart Title has "no ownership interest in the property." They analogize Stewart Title's claim to an attempt to "attach assets of Sanford Title in advance of any judgment." "By this logic," they argue, Stewart Title could assert *lis pendens* "on any property" the Jaffe Defendants owned, or "any property conveyed to any individual as a result of a Sanford Title closing." In the Jaffe

---

[4] The only other statutory or regulatory provision concerning *lis pendens* in Maryland is found in Md. Code (2006 Repl. Vol., 2010 Supp.), § 1-203(b) of the Family Law Article, which states that an annulment or divorce action does not constitute *lis pendens* unless the court orders otherwise. *See Greenpoint*, 390 Md. at 223 ("Except for the statute in respect to divorce cases above noted, the Maryland General Assembly has not seen fit to enact further statutes modifying *lis pendens* . . . .").

- 5 -

Defendants' view, "there is no authority for [Stewart Title] to assert a claim of title over real estate [it has] no interest in, simply because [it is] bringing this action against a title company."[5]

In contrast, Stewart Title maintains that the "only cognizable purpose" for the Jaffe Defendants' motion to terminate the *lis pendens* is "for the Defendants to complete their laundering of escrow funds through the properties by converting the equity in those properties to cash." In its view, the Jaffe Defendants' motion fails, because "the doctrine of *lis pendens* does not only apply to claims for actual ownership of property," and, in any event, "Stewart Title has a claim to title to the subject properties."

According to Stewart Title, a claim for a constructive trust or equitable lien is "directly related to the property," even if it does not concern actual ownership, and thus is appropriate for *lis pendens*. Quoting *Kim v. Nyce*, 2010 U.S. Dist. LEXIS 122781, 9-10 (D. Md. 2010), Stewart Title asserts that a claim for constructive trust is a claim "'to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of possession of said property.'" Thus, as Stewart Title sees it, "a claim for constructive trust takes the beneficial interest in title to real property, and vests that interest in the aggrieved party," leaving the record owner with only "bare legal title." Stewart Title opines that it is "nonsensical" to assert that such a claim does not relate to title to a property.

---

[5] The Jaffe Defendants argue that Sanford Title (not Stewart Title) has "suffered monetary loss" due to Sanford Title's payment of Bulla's original mortgage, despite Bulla's failure to arrange a replacement mortgage. They note that Sanford Title has sued Bulla in the Circuit Court for Prince George's County, alleging unjust enrichment. *See Sanford Title Servs., LLC v. Bulla*, Civ. No. CAE10-06876 (Md. Cir. Ct. Prince Geo. County). But, they assert that Sanford Title has not sought reimbursement from Stewart Title for its losses in connection with Bulla's refinancing.

Stewart Title suggests that the Jaffe Defendants' motion is really an attempt to attack the adequacy of its claims for constructive trust and equitable lien. According to plaintiff, the Jaffe Defendants "should have filed motions to dismiss those counts" if they contest the adequacy of Stewart Title's pleading. Regardless, Stewart Title insists that it has adequately pled both constructive trust and equitable lien claims; it has asserted that Sanford Title's escrow funds were misappropriated to pay for the Hillside Property and the Quanders Property, and that it has "also pled that it was forced to make up the shortfall in Sanford Title's escrow accounts due in part to those payments." In its view, "[t]he Defendants' theft of escrow funds followed by Stewart Title's replacement of those funds is all the proof that is necessary."

A constructive trust is a type of equitable remedy, and not a cause of action. *Lyon v. Campbell*, 33 F. App'x 659, 663 (4th Cir. 2002) (applying Maryland law and stating: "A constructive trust is an equitable remedy, not a cause of action in and of itself."). In *Wimmer v. Wimmer*, 287 Md. 663, 668 (1980), the Maryland Court of Appeals said that a constructive trust "is the remedy employed by a court of equity to convert the holder of the legal title to property into a trustee for one who in good conscience should reap the benefits of the possession of said property." The remedy applies where the defendant has acquired property by "fraud, misrepresentation, or other improper method, or where the circumstances render it inequitable for the party holding the title to retain it." *Id.*; *see also Washington Suburban Sanitary Comm'n v. Utilities, Inc.*, 365 Md. 1, 39 (2001) ("'The constructive trust, like its counterpart remedies "at law," is a remedy for unjust enrichment.' The remedy 'is no longer limited to misconduct cases; it redresses unjust enrichment, not wrongdoing.'") (quoting 1 DAN B. DOBBS, LAW OF REMEDIES § 4.3(2), at 597 (2d ed. 1993) ("DOBBS")). Put another way, a constructive trust applies "where a

person holding title to a property is subject to an equitable duty to convey it to another person on the ground that he would be unjustly enriched if he were permitted to retain it." *Siemiesz v. Amend*, 237 Md. 438, 441-42 (1965); *see also* 1 DOBBS, § 4.3(2), at 590-91 ("[T]he constructive trust plaintiff who proves his claim by clear and convincing evidence wins an *in personam* order that requires the defendant to transfer legal rights and title of specific property or intangibles to the plaintiff.").

Similarly, an equitable lien is also a restitutionary remedy. *See Mass Transit Admin. v. Granite Const. Co.*, 57 Md. App. 766, 774 (1984) ("In equity, the principal restitutionary remedies are the constructive trust, the equitable lien, subrogation, and the accounting for profits."); *accord Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 460 (2004). Professor Dobbs' treatise enumerates "two fairly disparate senses" of the equitable lien remedy. 1 DOBBS, § 4.3(3), at 601. The first is an "equitable lien created by express or implied-in-fact contract," and the second is an equitable lien imposed "to prevent unjust enrichment." *Id.* Maryland case law primarily focuses on the first, contract-based form of the remedy.[6] However, some Maryland cases have recognized the second type of equitable lien, including cases in which an equitable lien was imposed to enforce a right of contribution. *See, e.g.*, *Aiello v. Aiello*, 268 Md. 513, 519 (1973). According to Professor Dobbs, the unjust enrichment variety of equitable lien "is imposed for reasons that, in principle, are the same as

---

[6] Maryland courts have said that an equitable lien "is based on specific enforcement of a contract to assign property as security." *Pence v. Norwest Bank Minnesota, N.A.*, 363 Md. 267, 287 (2001) (internal citations and quotation marks omitted). It applies when a "contracting party sufficiently indicates an intention to make some particular property . . . a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security." *Id.* at 287-88 (internal citations and quotation marks omitted). "[I]n order to create an equitable lien there must be a clear intent by the parties to establish the lien." *Id.* at 290.

those that warrant the constructive trust, and it works in substantially the same way." 1 DOBBS, § 4.3(3), at 601. "The difference," Dobbs explains, "is that restitution is measured differently. Where the constructive trust gives a complete title to the plaintiff, the equitable lien only gives him a security interest in the property, which he can then use to satisfy a money claim." *Id.*

Thus, although Stewart Title has set forth its requests for imposition of a constructive trust and an equitable lien in separate counts, they are actually remedial requests that depend upon plaintiff's substantive causes of action. These include, *inter alia*, breach of contract, misappropriation, breach of fiduciary duty, constructive fraud, fraudulent conveyance, and unjust enrichment.

As noted, *lis pendens* in Maryland applies only to a case in which "the nature of the action [is] such that it directly involves the property." *Greenpoint*, 390 Md. at 223. A complaint for title or possession of real property certainly satisfies that standard. Similarly, the standard would also be satisfied in a condemnation proceeding. *See Md.-Nat'l Capital Park & Planning Comm'n v. Town of Washington Grove*, 408 Md. 37, 91 (2009). In contrast, *lis pendens* does not apply to "an action seeking recovery of money damages" for a tort unrelated to a defendant's property, in which the plaintiff simply seeks to "short cut the legal process" by encumbering the property so that there will be an asset from which the plaintiff can satisfy a judgment if it prevails. *Warfel v. Brady*, 95 Md. App. 1, 8, *cert. denied*, 331 Md. 88, *cert. denied*, 510 U.S. 977 (1993).

The parties have not cited any case in which a court in Maryland has directly addressed whether or when a claim for a constructive trust or an equitable lien may support a *lis pendens*,

and I have found none.[7] But, courts in other states have considered the question.

Some courts adhere to the view that an action to establish a constructive trust can never support a *lis pendens*. *See, e.g.*, *S. Utsunomiya Enters., Inc. v. Moomuku Country Club*, 866 P.2d 951 (Haw. 1994) (holding, under Hawaii *lis pendens* statute, that "*lis pendens* should be limited to actions *directly* seeking to obtain title to or possession of real property," and rejecting *lis pendens* as to an equitable lien) (emphasis in original); *Urez Corp. v. Superior Ct.*, 235 Cal. Rptr. 837, 842 (Cal. App. 2d Dist. 1987) (rejecting *lis pendens* in case that was "essentially a fraud action seeking money damages with additional allegations urged to support the equitable remedies of a constructive trust or an equitable lien[, where plaintiff] does not claim any

---

[7] In two cases, courts appeared to assume that *lis pendens* would ordinarily apply in an action to impose a constructive trust. In *DeShields*, *supra*, 338 Md. 422, the Court of Appeals considered whether a *lis pendens* was appropriate in a case seeking to impose a constructive trust on real property. But, the Court held that *lis pendens* did not apply because the lawsuit was initiated after a bona fide purchaser had already made a binding contract to purchase the property from the defendant. Thus, by the doctrine of equitable conversion, equitable title to the property had already passed to the purchaser by the time the suit was filed, and *lis pendens* could not attach to the bare legal title held by the defendant. *Id.* at 437-440. The Court did not suggest that *lis pendens* would not have applied to the constructive trust claim in the absence of equitable conversion.

In *Byrd v. Hoffman*, 417 B.R. 320 (D. Md. 2008), the court considered the validity of the bankruptcy court's order approving a trustee's sale of debtors' property, "free and clear of all liens, claims, interests, and encumbrances." There, while the bankruptcy proceeding was pending, the debtors had filed a complaint in state circuit court against the bankruptcy trustee, "alleging abuse of process and civil conspiracy and seeking the imposition of a constructive trust against the Property as a remedy." *Id.* at 324. The court "assume[d]," without deciding, "that Appellants' constructive trust claim was akin to a *lis pendens*." *Id.* at 328. The *Byrd* Court held that the circuit court action did not constitute a *lis pendens* on the property, reasoning that, in an "ongoing bankruptcy proceeding, the Bankruptcy Court retains exclusive jurisdiction, to the exclusion of other courts, over the Property" of the debtor, and thus, "the Circuit Court in which Appellants filed their constructive trust claim against property subject to the Bankruptcy Court's exclusive jurisdiction could not acquire or exercise jurisdiction over the Property and could not make a ruling 'affecting title to' the Property." *Id.* at 330.

ownership or possessory interest in the subject property").[8] These courts would reject a *lis pendens* under the circumstances of this case. For instance, in *Asher v. Alkan Shelter, LLC*, 212 P.3d 772, 782 n.34 (Alaska 2009), the Alaska Supreme Court stated that *lis pendens* is "inappropriate where the litigation sought damages for breach of fiduciary duty and breach of contract, even though the complaint demanded an accounting of all defendant's ill-gotten gains that might be traced to the property on which the plaintiff filed a *lis pendens*."

Other courts, however, have held that "[t]here is no doubt that an action to impress a constructive trust on realty affects title to that property, so that a notice of lis pendens may be filed . . . ." *Polk v. Schwartz*, 399 A.2d 1001, 1004 (N.J. Super Ct. App. Div. 1979); *see also Heck v. Adamson*, 941 A.2d 1028, 1030 (D.C. 2008) ("On its face, Heck's action asserting an equitable interest in the Naylor Road property *via* a constructive trust is *an* 'interest in real property,' which is all the [D.C. *lis pendens*] statute requires.") (emphasis in original); *Kerns v. Kerns*, 53 P.3d 1157, 1165 (Colo. 2002) (holding "that an action to impose a constructive trust on real property . . . entitles the party bringing the action to file a notice of lis pendens"); *Ross v. Specialty Risk Consultants, Inc.*, 621 N.W.2d 669, 676 (Wisc. 2000) (holding that *lis pendens* applies to an action seeking constructive trust because such an action "may ultimately change legal title" and thus "is an action seeking relief that 'might confirm or change interests in the real property'") (quoting Wisconsin *lis pendens* statute); *Fingerhut Corp. v. Suburban Nat'l Bank*,

---

[8] Other California appellate courts have come to the opposite conclusion. *See, e.g.*, *Coppinger v. Superior Ct.*, 185 Cal. Rptr. 24, 29 (Cal. App. 4th Dist. 1982) (holding that "an action to impose a constructive trust on real property is an action affecting title to or possession of real property" so as to support imposition of *lis pendens*). California's Supreme Court has not yet resolved the split. *See Kirkeby v. Superior Ct. of Orange County*, 93 P.3d 395, 400 n.7 (Cal. 2004) (declining to resolve "whether a claim that seeks to impose a constructive trust or equitable lien may be a basis for a lis pendens").

- 11 -

460 N.W.2d 63, 67 (Minn. App. 1990) ("Although a constructive trust is not in itself construed as a lien, it establishes an equitable lien for enforcement of the trust which brings the cause of action within the lis pendens statute."). This view is supported by a leading treatise on real property law. *See* 14 POWELL ON REAL PROPERTY § 82A.02[4][a], at 82A-16 (Michael Allen Wolf, ed. 2011) ("Lis pendens also applies to actions seeking creation of a constructive trust on specific property . . . .").

And, other courts recognize that whether a *lis pendens* is appropriate depends upon whether the plaintiff's assertion of a constructive trust is legitimate, or is merely an attempt to bootstrap a *lis pendens* onto an action for money damages. *Cf. Warfel*, *supra*, 95 Md. App. 1 (*lis pendens* is not appropriate in a claim for money damages). For instance, in *Levinson v. Eighth Judicial Dist. Ct.*, 857 P.2d 18, 19-21 (Nev. 1993), the Nevada Supreme Court rejected a plaintiff's *lis pendens* claim, where the plaintiff had filed a complaint to impose a constructive trust on realty owned by the owners of a stable, so as to collect on a judgment she had obtained in an earlier proceeding against the stable for personal injuries she had incurred while horseback riding there. The *Levinson* Court stated that the plaintiff "has merely attempted to obtain what amounts to a prejudgment attachment on the [owners'] property through the guise" of *lis pendens*, and that "lis pendens is not available to merely enforce a personal or money judgment." *Id.* at 21. The Nevada court emphasized that, for a *lis pendens* to be valid, there "must be some claim of entitlement to the real property affected by the lis pendens." *Id. See also Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995) (directing trial court to vacate *lis pendens*, where "plaintiffs seek a constructive trust in the purchased properties only to satisfy the judgment they seek against [defendant]").

I find particularly persuasive the analysis of the Superior Court of New Jersey, Appellate Division, in *Polk v. Schwartz, supra*, 399 A.2d 1001. In *Polk*, the plaintiffs were the owners of a nursing home in Atlantic City, which was leased to a corporation operated by the defendants, called the Senator Convalescent Center Corporation ("SCCC"). *Id.* at 1002-03. The plaintiffs were also minority stockholders of SCCC, having sold 90% of its stock to the defendants for a sum to be paid in monthly installments over ten years. *Id.* In their complaint, the plaintiffs contended that the defendants "'conspired to deplete the corporation (SCCC) of its assets and working capital, and to defraud the plaintiffs of the sums due under the lease and of the balance due under the sale of the stock,'" by (among other alleged acts) "drawing excessive salaries"; "charging personal expenditures, such as car rental, legal fees, travel and life insurance" to the nursing home; borrowing interest-free loans from the nursing home and failing to repay them; and converting patients' Medicaid funds to personal use. *Id.* at 1003 (quoting complaint).

In particular, the plaintiffs "alleged that during this period of alleged financial mismanagement of the nursing home a total of $632,174.63 due them under the lease and the contract of sale was fraudulently retained by the individual defendants and used to purchase certain properties in Atlantic City." *Id.* Accordingly, the plaintiffs sought to impose a constructive trust on the Atlantic City properties acquired by defendants, and filed notices of *lis pendens* on the properties. *Id.* On defendants' motion, the trial court discharged the *lis pendens*, and the plaintiffs appealed. *Id.* at 1002, 1004.

The New Jersey appellate court reversed. It observed that a *lis pendens* is not appropriate "in an action to recover a judgment for money or damages only."[9] *Id.* at 1004. Nevertheless, the court had "no doubt" that "an action to impress a constructive trust on realty affects title to that property, so that a notice of *lis pendens* may be filed." *Id.* Further, in comments that are equally apt in this case, the *Polk* Court stated, *id.* at 1005 (internal citation omitted; boldface added):

> It appears to us that unless the complaint unequivocally recited a cause of action which, under the statute, would not permit the filing of a notice of *lis pendens*, it was not appropriate for defendants to move directly for a discharge of the notice; instead, they should have moved either to dismiss the complaint or pertinent counts thereof for failure to state a claim upon which relief can be granted or for summary judgment, which motion would have included a request to discharge the notice of *lis pendens*. In that way, the legal sufficiency of the count in question or of the facts therein stated, or the existence of genuine issues of material fact, could have been tested in accordance with well-settled applicable rules of law. If it had been determined that there was no legally sufficient basis for plaintiffs' claim of a constructive trust, the pertinent counts would have been dismissed and the notice of *lis pendens* discharged. It should be noted that such course of action is still available to defendants. **Otherwise, there is the incongruous prospect that plaintiffs may ultimately succeed in establishing their entitlement to a constructive trust on the affected realty, but will nonetheless have been deprived in the interim of the statutory protection of a notice of *lis pendens*.**

The allegations of misappropriation of funds presented in *Polk* are strikingly similar to those in this case, and the *Polk* Court's admonition against attempting to challenge the merits of a plaintiff's cause of action by filing a motion to lift a *lis pendens* rings true here. This is not a case, such as *Warfels*, *supra*, 95 Md. App. 1, or *Levinson*, *supra*, 857 P.2d 18, in which the plaintiff's complaint clearly sounds only in damages, and where the assertion of a *lis pendens* is a transparent attempt to attach the defendant's assets before judgment by clouding the title of properties that are unrelated to the merits of the plaintiff's claim. Rather, like the plaintiffs in

---

[9] *Polk* was cited with approval in *Warfel*, *supra*, 95 Md. App. at 8, for the principle that "*lis pendens* may not be predicated upon an action seeking recovery of money damages."

*Polk*, Stewart Title alleges a constructive trust on properties that are closely connected with defendants' alleged fraudulent course of conduct. Stewart Title alleges that these specific properties were purchased illegitimately with monies misappropriated from Sanford Title's escrow account, creating a shortfall in that account, which Stewart Title has been forced to repay.

To be sure, some courts would reject imposition of a *lis pendens* under these circumstances. *See, e.g.*, *Asher*, *supra*, 212 P.3d 772. But, as the *Polk* Court suggested, termination of a *lis pendens* before reaching the merits of a facially plausible constructive trust claim would create the potential for the defendant to sell the property to an innocent purchaser before the constructive trust claim is resolved, thus rendering the constructive trust a dead letter. Preventing such mischief is the entire purpose of a *lis pendens*.

Moreover, I am satisfied that a complaint seeking to establish a constructive trust on specified real property is an action whose "nature . . . [is] such that it directly involves the property," *Greenpoint*, 390 Md. at 223, and is a proceeding "directly relating to the title to the property transferred or in which the ultimate interest and object is to subject the property in question to the disposal of a decree of the court." *DeShields*, 338 Md. at 435.[10] Thus, it is within the ambit of Maryland's *lis pendens* doctrine.

---

[10] Notably, Professor Dobbs provides a hypothetical example to distinguish between a constructive trust and an equitable lien; the hypothetical is similar to the facts of this case, and underscores that constructive trust actions satisfy Maryland's *lis pendens* standard, as enunciated in *Greenpoint* and *DeShields*. Dobbs states, 1 DOBBS, § 4.3(3), at 602 (emphasis added):

> If the defendant secures money from the plaintiff by embezzlement and then uses that money to purchase a house and lot, the plaintiff is entitled to a constructive trust, *which in the end will operate to give him title to the property purchased with his money*. But if the defendant merely uses the plaintiff's money to add a house on a lot he already owns, it is clear that the plaintiff has no claim to a constructive trust on the house and lot because his money did not go into the lot. He is entitled instead to an equitable lien on the house and lot for the amount of money

Under these circumstances, I agree with Stewart Title that the Jaffe Defendants' motion to terminate the *lis pendens* is, in essence, an inappropriate lateral attack on the merits of plaintiff's Complaint. If the defendants believe that plaintiff cannot prevail on Counts VIII and IX of its Complaint, the provisions of Rule 12 and Rule 56 of the Federal Rules of Civil Procedure give defendants an ample arsenal to meet allegedly deficient allegations head on. Until such time as the merits of Stewart Title's request to impose a constructive trust and an equitable lien are resolved, however, Stewart Title's Complaint constitutes a valid *lis pendens* on the Hillside Property and the Quanders Property.

The Jaffe Defendants' request to remove the *lis pendens* from the Quanders Property is unfounded for another reason. Bulla, rather than any of the Jaffe Defendants, owns the Quanders Property, and Bulla has not moved to lift the *lis pendens*. The Jaffe Defendants have advanced no evidence or authority for the proposition that they have an interest in the Quanders Property sufficient to give them standing to request termination of the *lis pendens*.

Accordingly, I will deny the Jaffe Defendants' Motion to Terminate Lis Pendens (ECF 65). An Order implementing this ruling follows.


Dated: July 8, 2011  /s/
Ellen Lipton Hollander
United States District Judge

---

embezzled from him. This will permit him to force a sale of the property if necessary and to use the proceeds of the same to reimburse himself.

For purposes of the Jaffe Defendants' motion, it is not necessary for me to decide whether a claim for an equitable lien, separate from a claim for a constructive trust, could constitute a *lis pendens* in Maryland.