IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEWART TITLE GUARANTY COMPANY,
   *Plaintiff,*

v.

SANFORD TITLE SERVICES, L.L.C., et al,
   *Defendants.*

Civil Action No.: ELH-11-00620

# MEMORANDUM

Plaintiff Stewart Title Guaranty Company ("Stewart Title") brought suit against defendants Sanford Title Services, L.L.C. ("Sanford Title") and Sanford B. Jaffe ("Jaffe"), as well as a number of other defendants, regarding defendants' alleged negligent and fraudulent conduct. *See* First Amended Complaint ("Amended Complaint," ECF 85). Sanford Title (ECF 44) and Jaffe (ECF 47) answered the initial Complaint (ECF 1),[1] and filed a "Counter-Claim Of Sanford B. Jaffe And Sanford Title Services, LLC Against Stewart Title Guaranty Company" ("Counterclaim," ECF 79).

Thereafter, Stewart Title filed a "Motion To Dismiss Counterclaim" ("Motion," ECF 90).[2] Sanford Title and Jaffee failed to respond to the Motion. The Court rules now pursuant to Local Rule 105.6, no hearing being necessary.

---

[1] The original Complaint (ECF 1) is substantially identical to the Amended Complaint.

[2] Stewart Title has also filed a "Memorandum Of Law" in support of its Motion ("Motion Memo," ECF 90-1).

**Factual and Procedural Background[3]**

Stewart Title is an insurance company that underwrites title insurance. Amended Complaint ¶ 3. Sanford Title acted as a settlement agent, conducting closings for people and businesses seeking to purchase and/or finance purchases of real property. *Id.* ¶ 23.[4] At all relevant times, Jaffe was an employee of Sanford Title. *Id.* ¶ 24. Stewart Title alleges that Sanford Title and Jaffe, along with the numerous other defendants, improperly diverted and used escrow funds for their own purposes, and failed to pay off existing mortgages and liens. *Id.* ¶¶ 27, 29. Eventually, Sanford Title stopped conducting closings. *Id.* ¶ 39. Documents went unrecorded, mortgages were unsatisfied, and required disbursements were not made. *Id.* Stewart Title rectified a number of these problems, incurring heavy costs as a result. *Id.* ¶ 41. Consequently, Stewart Title brought suit against Sanford Title, Jaffe, and others, alleging negligence, breach of contract, misappropriation, breach of fiduciary duty, constructive fraud, fraudulent conveyance, conspiracy, and unjust enrichment. Plaintiff also seeks the imposition of a constructive trust and an equitable lien, and asserts claims under surety and fidelity bonds.

As noted, Sanford Title and Jaffe filed a Counterclaim against Stewart Title. In the Counterclaim, they allege that, under the Agency Agreement between Stewart Title and Sanford Title, Stewart Title was permitted to audit and investigate the counterclaimants' business, and did so on at least two occasions. Counterclaim at 2-4. Further, they allege that, in the course of

---

[3] The Court construes the facts in the light most favorable to defendants, although they did not oppose the motion. *Cf. Philips v. Pitt County Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] In its Amended Complaint, at ¶ 45, Stewart Title alleges: "On or about January 26, 2007, Stewart Title and Sanford Title entered into a Title Insurance Underwriting Agreement (the 'Agency Agreement')." In their respective Answers to the Complaint, which contained the same allegation (*see* ECF 1, at ¶ 45), both Sanford Title and Jaffee admitted to this allegation. *See* ECF 44 at ¶ 45; ECF 47 at ¶ 45. However, the Agency Agreement has not been made a part of the record.

such investigations, Stewart Title discovered "deficiencies and irregularies," which it failed to report, despite having a duty to do so. *Id.* at 5, 7. According to Sanford Title and Jaffee, if Stewart Title had reported its discoveries, the fraud would have been discovered and the losses would have been prevented. *Id.* at 8. Sanford Title and Jaffee also allege that Stewart Title knew of the criminal record of defendant Bonnie Meehan, an employee of Sanford Title, and had a duty to disclose that knowledge, but failed to do so. *Id.* at 10-12. The counterclaimants assert that, had they known of Ms. Meehans's character, they would have fired her, which, in turn, would have prevented the losses. *Id.* at 10, 19. Finally, Sanford Title and Jaffe assert that Stewart Title seized relevant files from them, in which they discovered problems, but failed to take steps to cure the problems, *id.* at 13-15, which allegedly precipitated the losses at issue in this case. *Id.* at 17, 19.

In its motion to dismiss, filed pursuant to FED. R. CIV. P. 12(b)(6), Stewart Title asserts that it owed no tort duties to Sanford Title or Jaffe. Motion Memo at 5. Further, Stewart Title asserts that it had no obligation to provide audit results to Sanford Title or Jaffe, *id.* at 8, or to disclose the character of Bonnie Meehan, *id.* at 9, or to cure title defects it may have discovered. *Id.* at 10. Essentially, Stewart Title argues that it owed no duty "to prevent Sanford Title and Jaffe from negligently closing real estate transactions and stealing escrow funds." Motion at 2. Stewart Title also alleges that the Counterclaim fails to sufficiently allege damages, Motion Memo at 10, and fails to comply with FED. R. CIV. P. 13, as it was not filed with Sanford Title and/or Jaffe's intial pleadings (i.e. their Answers). *Id.* at 11.

## Discussion

### *Standard of Review*

Under FED. R. CIV. P. 8(a)(2), a pleading that states a claim for relief must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the Rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555-56 n.3 (2007) (citation omitted). To be sure, the plaintiff or counterplaintiff need not include "detailed factual allegations in order to satisfy" Rule 8(a)(2). *Id.* at 555. However, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556. Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "'the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1950 (2009) (citation omitted). In other words, the Rule demands more than bald accusations or mere speculation. *Twombly,* 550 U.S. at 556. Consequently, a pleading that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient under the Rule. *Id.*

Both *Twombly* and *Iqbal* make clear that, in order to survive a motion to dismiss under FED. R. CIV. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Iqbal,* 129 S. Ct. at 1953 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions'. . ." (citation omitted)); *see Simmons v. United Mortgage and Loan Inv.*, 634 F.3d 754, 768 (4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).

However, a motion pursuant to Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks omitted). Moreover, in resolving a Rule 12(b)(6) motion, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 1740 (2010).

*Analysis*

Sanford Title and Jaffee have failed to respond to the Motion. The failure to respond to the Motion is tantamount to a waiver of any opposition on the merits. *See, e.g.*, *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) ("By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons [her] claim."); *Mentch v. Eastern Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (holding that failure to address defendant's arguments for summary judgment in opposition brief constituted abandonment of claim).

In any event, the Motion appears meritorious. "To establish a cause of action in negligence a plaintiff must prove the existence of four elements: a duty owed to him . . ., a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages." *Jacques v. First Nat. Bank of Maryland*, 307 Md. 527, 531, 515 A.2d 756, 758 (1986); *accord Pease v. Wachovia SBA Lending, Inc.*, 416 Md. 211, 248 n. 12, 6 A.3d 867, 889 n. 12 (2010).[5] In *Jacques,* the Maryland Court of Appeals explained: "In

---

[5] The instant matter is a diversity case. *See* 28 U.S.C. § 1332. With respect to tort claims, Maryland applies the principle of *lex loci delicti*, i.e., the law of the place where the alleged harm occurred. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ben-Joseph v. Mt. Airy Auto Transporters, LLC,* 529 F. Supp. 2d 604, 606 (D. Md. 2008); *Proctor v. Wash. Metro. Area Transit Auth.*, 412 Md. 691, 726, 990 A.2d 1048, 1068 (2010). Because the alleged

determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties. Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability. This intimate nexus is satisfied by contractual privity or its equivalent." 307 Md. at 534-35, 515 A.2d at 759-60.

Stewart Title and Sanford Title were in contractual privity. As discussed, *supra,* it is undisputed that they entered into an "agency agreement" by which Stewart Title was the underwriter of title insurance. Stewart Title cannot, however, be held liable for the alleged breach of duties it did not assume as part of that agreement. *See, e.g., Proctor v. Metropolitan Money Store Corp.*, 79 F.Supp.2d 724, 736-40 (D. Md. 2008) ("The employment of an agent for purposes of issuing title insurance does not (at least by itself) establish an agency relationship for purposes of settlement and closing activities undertaken by that title agent.").

Moreover, Stewart Title asserts: "None of the 'duties' alleged by Sanford Title have anything to do with the issuance of title insurance policies." Motion Memo at 8. Although Sanford Title and Jaffee did not respond to the Motion, their Counterclaim does not refute this assertion. The Counterclaim alleges that the Agency Agreement "*permitted* Stewart Ttitle to conduct audits and investigations of Sanford Title." Counterclaim ¶ 3 (emphasis added). However, defendants do not allege that Stewart Title was legally *obligated* to conduct such audits and investigations or to report the results to defendants. Yet, defendants conclusorily assert that Stewart Title had a duty to report or disclose the results of its audits and

---

harm occurred in Maryland, the Court will apply Maryland law with respect to plaintiff's tort claims. *See Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007) (stating that the court "must apply the substantive law of the forum state including its choice of law rules)."

investigations. *Id.* ¶ 7. Similarly, Sanford Title and Jaffe aver that Stewart Title had a duty to disclose its knowledge of Bonnie Meehan's unfavorable background. *Id.* ¶¶ 10-11. Yet, defendants do not allege that Stewart Title was legally *obligated* to acquire such knowledge of their employees; they assert, summarily, that once in possession of such information Stewart Title was required to disclose it.[6] With respect to Stewart Title's alleged duty to cure defects it discovered after examining Sanford Title's files, *id.* ¶¶ 13,15, Stewart Title contends: "There is no allegation of an agreement by and between Stewart Title and Sanford Title which relates to the curing of title defects." Motion Memo at 10.

In my view, the Counterclaim consists of "bald accusations or mere speculation." *Twombly,* 550 U.S. at 555. Sanford Title and Jaffe have failed to assert any cognizable tort or contractual duty owed to them by plaintiff; their Counterclaim does not "state a claim to relief that is plausible on its face." *Id.* at 570.[7]

## Conclusion

For the foregoing reasons, the Court will grant plaintiff's motion to dismiss the Counterclaim (ECF 90). A separate Order consistent with this Memorandum follows.

Date: <u>November 10, 2011</u>                    /s/
                                                    Ellen Lipton Hollander
                                                    United States District Judge

---

[6] Stewart Title asserts: "Upon information and belief, Jaffe, the owner of Sanford Title, was well aware of Bonnie Meehan's 'character' at the time she was hired to manage Sanford Title. As such, the contention that Jaffe and Sanford Title would have fired Ms. Meehan if notified of her 'character' is specious, at best." Motion Memo at 9 n. 3.

[7] In light of the grounds of my ruling, I need not address plaintiff's claim under Rule 13 of the Federal Rules of Civil Procedure.

7