IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **STEWART TITLE GUARANTY COMPANY** | * | |
| | * | |
| **Plaintiff,** | | |
| **v.** | * | |
| | | **Case No. ELH-11-0620** |
| **REVOLUTIONARY MARKETING, INC., et al.** | * | |
| | * | |
| **Defendants.** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## REPORT AND RECOMMENDATION

The above-referenced case was referred to the undersigned for review of plaintiff's

motion for default judgment and to make recommendations concerning damages, pursuant to 28

U.S.C. § 301 and Local Rule 301.6.  (ECF No. 147.)  Currently pending is plaintiff's Request for

Default Judgment against Leon Williams and Revolutionary Marketing, Inc. ("Motion" or

"Motion for Default Judgment").  (ECF No. 144.)  No hearing is deemed necessary.  See Fed. R.

Civ. P. 55(b)(2); Loc. R. 105.6.  For the reasons discussed herein, I respectfully recommend that

plaintiff's Motion (ECF No. 144) be GRANTED as to Revolutionary Marketing, Inc.[1] and that

relief be awarded as set forth herein.

### I.  BACKGROUND

Stewart Title Guaranty Company ("plaintiff" or "Stewart Title") brought this suit against

Revolutionary Marketing, Inc. ("defendant" or "Revolutionary Marketing"), Niesha Williams

---

[1] Because Judge Hollander entered a Settlement Order dismissing this action as to Leon Williams (ECF No. 191), this report and recommendation will only address plaintiff's Motion for Default Judgment (ECF No. 144) as it relates to Revolutionary Marketing.

("Ms. Williams"), AJ&A Investment Group Nevada, LLC, Rhonda M. Scott, Senyo N. Bulla, and Selective Insurance Company of America (collectively, "defendants"), and others,[2] for claims arising out of an alleged conspiracy to conduct a fraudulent real estate closing scheme. (Compl., ECF No. 1.)

Plaintiff is a Texas insurance company that underwrites title insurance. (Am. Compl., ECF No. 85 ¶ 3.) Defendant Revolutionary Marketing is a Maryland corporation that received funds from real estate transactions relating to properties located throughout the state of Maryland at issue in this case. (Id. ¶ 11.) At all times material to this action, Revolutionary Marketing was owned and controlled by Ms. Williams, who was also one of its employees. (Id.)

On March 8, 2011, plaintiff filed this suit, alleging that defendants conspired to steal funds from the escrow account of Sanford Title Services, LLC ("Sanford Title"), a Maryland limited liability company, also named as a defendant, that performs closings for real estate transactions. (Id. ¶¶ 4, 79-80.) Sanford Title was, at one time, a limited agent of plaintiff for purposes of issuing title insurance policies underwritten by plaintiff. (ECF No. 144, Ex. B ¶ 3.) In its capacity as agent, Sanford Title issued numerous "owner's" and "lender's" title insurance policies, underwritten by plaintiff. (Id.) Plaintiff claims that "during Sanford Title's tenure [as plaintiff's agent], the defendants (including Sanford Title) conspired to use Sanford Title for their own improper purposes because settlement companies [such as Sanford Title] have access to enormous amounts of cash." (ECF No. 85 ¶¶ 23, 26-27, 79-80.) Plaintiff asserts that "defendants used Sanford Title's escrow funds for themselves, their families, friends, cronies, and related business entities," and "towards that end, they paid themselves and each other first;" and "they paid proper parties last, if at all." (Id. ¶ 27.)

---

[2] Although plaintiff named many other defendants in its Complaint, this action has been dismissed against the defendants not specifically listed above.

Plaintiff claims that defendants' actions "interfered with the proper functioning of the settlement company" in multiple respects. (Id.) Despite receiving escrow funds for recordation of instruments, Sanford Title did not record Deeds of Trust for more than 50 closings. (Id. ¶ 28.) Plaintiff has recorded and is continuing to record those instruments, and has incurred more than $250,000.00 in costs in doing so. (Id.) Plaintiff also alleges that existing mortgages and liens were not paid off in at least eight transactions. (Id. ¶ 29.) Finally, plaintiff contends that despite regularly receiving money in escrow insurance premiums, Sanford Title seldom remitted premiums to plaintiff for transactions that were to be insured by plaintiff, and instead used the funds to make improper disbursements to defendants. (Id. ¶ 34.) Plaintiff asserts that defendant Revolutionary Marketing received the sum of $459,597.31 in improper disbursements from Sanford Title's escrow account. (Id. ¶ 35.)

Plaintiff also claims that defendants' malfeasance caused a shortfall in Sanford Title's escrow account between $2 million and $4 million. (Id. ¶ 39-40.) Plaintiff incurred costs to resolve or correct "many of the acts or omissions arising out of closings conducted by Sanford Title," including costs to: record land instruments, pay property taxes, pay unreleased liens, and resolve title insurance claims. (Id. ¶ 41); (ECF No. 144 ¶ 2). Accordingly, in its Amended Complaint, plaintiff seeks: (1) to recover compensatory and punitive damages plus interest, attorney's fees, and costs (ECF No. 85 ¶¶ 45, 51, 57, 64, 71, 78, 82, 88, 91, 95, 99, 105); (2) a court order establishing a constructive trust for the benefit of plaintiff for any assets or properties that could be traced to improper closings conducted by Sanford Title (Id. ¶ 88); (3) a court order granting plaintiff an equitable lien on improperly received assets or properties received from closings conducted by Sanford Title (Id. ¶ 91); and (4) a court order granting plaintiff a writ of restitution for the improper disbursements made to defendants. (Id. ¶ 105.)

Defendant Revolutionary Marketing was served with a Summons and copy of plaintiff's Complaint on March 19, 2011, as indicated by the return of service filed with the court on March 23, 2011.[3]  (ECF No. 14.)  After Revolutionary Marketing and Mr. Williams failed to file an Answer or otherwise defend, plaintiff filed a Request for Entry of Default against those two parties, which the Clerk granted on April 15, 2011.  (ECF Nos. 39, 43.)  On August 25, 2011, plaintiff filed its Amended Complaint to "accurately reflect" the names of two defendants.  (ECF Nos. 82, 85.)  On February 7, 2012, plaintiff filed the instant Motion for Default Judgment.  (ECF No. 144.)  In support thereof, plaintiff submitted records from Mr. Williams' checking account (ECF No. 145, Ex. A) and the affidavit ("first affidavit") of Mark V. Borst ("Mr. Borst"), Vice President and Regional Claims Counsel for plaintiff.  (ECF No. 144, Ex. B.)

On February 7, 2012, Judge Hollander referred plaintiff's motion to the undersigned to review and to make recommendations concerning damages.  (ECF No. 147.)  Because the undersigned was unable to make a determination as to an appropriate award of damages based upon the evidence submitted by plaintiff, the undersigned directed plaintiff to submit supplemental evidentiary support for its Motion by March 15, 2012.  (ECF No. 162.)  Plaintiff filed its Supplement to Plaintiff's Request for Default Judgment against Leon Williams and Revolutionary Marketing, Inc. ("First Supplement") on March 6, 2012.  (ECF No. 164.)  In support of its First Supplement, plaintiff submitted the wire receipts from Sanford Title's files (ECF No. 165, Ex. B) and the bank records it had included with its Motion, which plaintiff stated were from an account discovered to be jointly held by Mr. Williams and Ms. Williams.  (Id., Ex. C.)  Following a settlement conference held on May 21, 2012 by Magistrate Judge Stephanie A. Gallagher, Judge Hollander entered a Settlement Order dismissing this action as to Mr. Williams,

---

[3] Mr. Williams was also served with a Summons and copy of plaintiff's Complaint on March 19, 2011.  (ECF No. 15.)

(ECF No. 191), thereby rendering as moot plaintiff's Motion for Default Judgment (ECF No. 144) as to Mr. Williams.  Accordingly, this report and recommendation will only address plaintiff's Motion (ECF No. 144) as to defendant Revolutionary Marketing.

When the undersigned reviewed plaintiff's Motion as to Revolutionary Marketing, the undersigned noted that it appeared the only evidence to support plaintiff's request for entry of judgment against Revolutionary Marketing was the first affidavit of Mr. Borst, in which Mr. Borst summarily stated that "Revolutionary Marketing received a total of $459,867.31 directly from the escrow account."  (ECF No. 144, Ex. B ¶ 4.)  Because the undersigned was unable to make an independent determination as to an appropriate award of damages based upon Mr. Borst's conclusory statement, by letter Order of June 13, 2012 (ECF No. 195), the undersigned directed plaintiff to submit additional evidentiary support for its Motion. (Id.)  Specifically, the undersigned directed plaintiff to submit a detailed affidavit as to the methodology used to determine the total amount received by Revolutionary Marketing and supporting documentation for that calculation.  (Id.)  Plaintiff filed its Second Supplement to Plaintiff's Request for Default Judgment against Revolutionary Marketing, Inc. ("Second Supplement") on June 26, 2012. (ECF No. 199.)  In support of its Second Supplement, plaintiff submitted the following evidence: (1) a second affidavit of Mr. Borst ("second affidavit") (Id., Ex. 1); (2) the escrow account records of Sanford Title obtained from Susquehanna Bank ("escrow account records") (Id., Ex. 2); (3) a summary generated by Sandy Pfeiffer ("Ms. Pfeiffer"), a forensic accountant retained by plaintiff, who analyzed Sanford Title's escrow account records and totaled all of the escrow disbursements made to Revolutionary Marketing ("accounting summary") (Id., Ex. 3); (4) interrogatory answers of Sanford Title in this action, which  contain a spreadsheet identifying the disbursements made to Revolutionary Marketing from Sanford Title's escrow account

("spreadsheet") (Id., Ex. 4); and (5) bank records of Revolutionary Marketing obtained from SunTrust Bank ("bank records").  (Id., Ex. 5.)

## II.  STANDARD FOR ENTRY OF DEFAULT JUDGMENT

In reviewing a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability.  Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780-81 (4th Cir. 2001).  It remains for the court, however, to determine whether these unchallenged factual allegations constitute a legitimate cause of action.  Id.; see also 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages.  Ryan, 253 F.3d at 780-81.  The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations.  E.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 154 (2d Cir. 1999).  In so doing, the court may conduct an evidentiary hearing.  Fed. R. Civ. P. 55(b)(2).  The court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record for the award.  See, e.g., Stephenson v. El-Batrawi, 524 F.3d 907, 917 n.11 (8th Cir. 2008) ("Foregoing an evidentiary hearing may constitute an abuse of discretion when the existing record is insufficient to make the necessary findings in support of a default judgment."); Adkins v. Teseo, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum).

In sum, the court must (1) determine whether the unchallenged facts in plaintiff's

Complaint constitute a legitimate cause of action, and, if they do, (2) make an independent

determination regarding the appropriate amount of damages.

## III.  DISCUSSION

### A.  Defendant Revolutionary Marketing's Liability

In the instant Motion, plaintiff seeks damages for losses and costs it incurred as a result

of a conspiracy to steal funds from the escrow account of Sanford Title, as alleged in Count VII

of plaintiff's Amended Complaint.  (ECF No. 85 ¶¶ 79-82, 144.)  Specifically, plaintiff seeks to

recover the amount of funds that it alleges defendant Revolutionary Marketing improperly

received "for its role in the conspiracy, through disbursements directly from Sanford Title's

escrow account."  (ECF No. 144 ¶ 7.)  Under Maryland law,[4] a claim for civil conspiracy

requires proof of the following elements:

> (1) [C]onfederation of two or more persons by agreement or understanding;
> (2) some unlawful or tortious act done in furtherance of the conspiracy or use of
> unlawful or tortious means to accomplish an act not in itself illegal; and
> (3) actual legal damage resulting to the plaintiff.

Lloyd v. Gen. Motors Corp., 397 Md. 108, 154 (Md. 2007) (internal citation and quotation

omitted).  Co-conspirators are joint tortfeasors and each is jointly and severally liable for all

damages naturally flowing from the conspiracy.  Alleco, Inc. v. Harry & Jeanette Weinberg

Found., Inc., 99 Md. App. 696, 708 (Md. Ct. Spec. App. 1994) (internal citation and quotation

omitted).  Accordingly, to establish a co-conspirator's civil liability for conspiracy, "[i]t is not

---

[4] Because the court's jurisdiction over this matter is based on diversity of citizenship, the undersigned must apply Maryland law to issues of substantive law.  See Erie R.R. Co. v Tompkins, 304 U.S. 64, 78 (1938); Wells v. Liddy, 186 F.3d 505, 527-28 (4th Cir. 1999) ("As a court sitting in diversity, we have an obligation to interpret the law in accordance with the Court of Appeals of Maryland, or where the law is unclear, as it appears that the Court of Appeals would rule.").

necessary … for a plaintiff to allege or prove that each member of the conspiracy committed some independent unlawful act in furtherance of the agreement, only that one or more of them committed such an act and that harm ensued to the plaintiff as a result." (Id.)

Here, the well-pled allegations in plaintiff's Amended Complaint allege that: (1) "defendants entered into agreements or understandings to improperly use and take for themselves, their friends, families, cronies, and related business entities, the escrow funds received by Sanford Title" (ECF No. 85 ¶ 79); (2) "instead of using escrow funds as instructed, improper disbursements were made to and received by the defendants" (Id. ¶ 80); and (3) "defendants [including Revolutionary Marketing] conspired and misappropriated escrow funds with evil motives, intent to injure, ill will, and or an intent to defraud." (Id. ¶ 81.) Finally, the Amended Complaint asserts that plaintiff was damaged as a direct and proximate result of the conspiracy because Sanford Title seldom remitted money received in escrow insurance premiums to plaintiff for transactions that were to be insured by plaintiff, and instead used the funds to make improper disbursements to defendants. (Id. ¶¶ 34, 82.) Specifically, plaintiff's Amended Complaint maintains that defendant Revolutionary Marketing received $459,597.31 for its role in the conspiracy, through disbursements made directly from Sanford Title's escrow account. (Id. ¶ 35.) The undersigned concludes that the unchallenged factual allegations in the Amended Complaint constitute a legitimate cause of action.[5]

---

[5] The undersigned will not address defendant's liability as to the other counts in plaintiff's Amended Complaint because, in its Motion, plaintiff only seeks relief based upon the conspiracy count set forth in Count VII of its Complaint and Amended Complaint. (ECF Nos. 1 ¶¶ 78-81, 85 ¶¶ 79-82, 144.) Further, defendant's liability as to the count of conspiracy supports an award for the total sum of damages sought by plaintiff in its Motion. (ECF No. 144 ¶¶ 1-2, 7.)

### B. **Damages**

Having determined that plaintiff has proven liability, the undersigned now undertakes an

independent determination of the damages to which it is entitled.  Plaintiff seeks to recover a

total sum of $459,597.31 from Revolutionary Marketing, which represents the sum of improper

disbursements that plaintiff alleges Revolutionary Marketing directly received from Sanford

Title's escrow account. [6]    (ECF Nos. 144, 164 ¶ 11.)  Plaintiff relies on the following evidence

to establish its damages as to defendant Revolutionary Marketing:  (1) the first and second

affidavits of Mr. Borst, Vice President and Regional Claims Counsel for plaintiff (ECF No. 144

¶ 7 & Ex. B), (ECF No. 199, Ex. 1); (2) the escrow account records of Sanford Title (ECF No.

199, Ex. 2); (3) the accounting summary generated by Ms. Pfeiffer (Id., Ex. 3); (4) a spreadsheet

created by Sanford Title, which identifies the disbursements made to Revolutionary Marketing

from Sanford Title's escrow account; (Id., Ex. 4); and (5) the bank records of Revolutionary

Marketing  (Id., Ex. 5.)

In his first affidavit, Mr. Borst states that "from 2008 to 2010, a series of improper

disbursements were made from Sanford Title's escrow accounts to … Revolutionary Marketing,

Inc." and that "Revolutionary Marketing received a total of $459,867.31 directly from the escrow

---

[6] In its Motion, plaintiff sought to recover $459,897.31 from Revolutionary Marketing (ECF No. 144), while plaintiff's Amended Complaint stated that defendant received $459,597.31 in improper disbursements.  (ECF No. 85 ¶ 35.)  In his first affidavit, Mr. Borst states that Revolutionary Marketing received a total of $459,867.31 in disbursements.  (ECF No. 144, Ex. B ¶ 4.)  Rule 54(c) of the Federal Rules of Civil Procedure provides that "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  In a letter Order dated March 5, 2012, the undersigned noted that the sum of damages requested by plaintiff appeared to exceed the amounts stated in plaintiff's Amended Complaint and directed plaintiff to explain this disparity.  (ECF No. 162.)  In its First Supplement, plaintiff explained that the disparity was caused by a typographical error in plaintiff's Motion and stated that it seeks damages against Revolutionary Marketing in the amount pled in plaintiff's Amended Complaint:  $459,597.31.  (ECF No. 164 ¶ 11.)  In addition, in his second affidavit, Mr. Borst reiterates that plaintiff seeks this same amount.  (ECF No. 199, Ex. 1 ¶ 4.)

account."  (Id. ¶ 4.)  In his second affidavit, Mr. Borst states that "[i]n 2009, a series of improper

disbursements were made from Sanford Title's escrow accounts to Revolutionary Marketing,

Inc. … which received a total of $459,597.31 directly from the escrow account."  (ECF No. 199,

Ex. 1 ¶ 4.)  Mr. Borst notes that the $459,597.31 figure "was calculated using escrow account

records obtained from Susquehanna Bank, which held the escrow account used by Sanford

Title."  (Id.)  In his second affidavit, Mr. Borst also lists the individual disbursements made to

Revolutionary Marketing and claims that these disbursements are shown by Sanford Title's

escrow account records. (ECF No. 199, Exs. 1 ¶ 4, 2.)  In addition, Mr. Borst states that "[Ms.]

Pfeiffer analyze[d] the escrow account maintained by Sanford Title [and] determined that

$459,597.31 had been disbursed from escrow to Revolutionary."  (ECF No. 199, Exs. 1 ¶ 5, 3.)

Finally, Mr. Borst claims that "Revolutionary [Marketing's] receipt of those disbursements is

confirmed by the bank records subpoenaed from SunTrust Bank by Stewart Title's counsel."

(ECF No. 199, Exs. 1 ¶ 6, 5.)

      I have reviewed Mr. Borst's affidavits and supporting documents and find that plaintiff

has provided adequate evidentiary support for the damages claimed.  Accordingly, I recommend

granting plaintiff's request for damages in the amount of $459,597.31.[7]

## IV.  CONCLUSION

      In sum, I recommend that:

1.  The court GRANT plaintiff's Motion for Default Judgment (ECF No. 144) as to

    Revolutionary Marketing, Inc.; and

---

[7] The undersigned notes that plaintiff requests "costs and attorney's fees" in its Amended Complaint.  (ECF No. 85 ¶¶ 45, 51, 57, 64, 71, 78, 82, 88, 91, 95, 99, 105.)  Because plaintiff does not request such relief in its Motion or provide an itemization of costs, (ECF No. 144), the undersigned does not address such relief in this report and recommendation.

2.  The court award plaintiff damages in the amount of $459,597.31 against Revolutionary

Marketing, Inc.; and

3.  The court DENY plaintiff's Motion for Default Judgment (ECF No. 144) as to Mr. Williams

as moot.

I also direct the Clerk to mail a copy of this Report and Recommendation to defendant

Revolutionary Marketing at the address listed on plaintiff's Complaint.  (ECF No. 1.)

Any objections to this Report and Recommendation must be served and filed within

fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Date:    7-19-12                                    /s/
                                            Beth P. Gesner
                                            United States Magistrate Judge